Jami Wintz McKeon (JM-6144)
Michael S. Kraut (MK-4469)
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, New York 10178-0060
Telephone: (212) 309-6000
jmckeon@morganlewis.com
mkraut@morganlewis.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

_____

PEDRO E. RIVAS, on Behalf of Himself  :   No. 08 CV 3685 (BSJ) (MDF)
and All Others Similarly Situated,    :
                                      :   REPLY MEMORANDUM OF LAW
           Plaintiff,                 :   IN SUPPORT OF DEFENDANTS'
                                      :   MOTION TO DISMISS
        v.                            :   PLAINTIFF'S COMPLAINT
                                      :
LEHMAN BROTHERS BANK, FSB;            :
BNC MORTGAGE, INC.,                   :   ELECTRONICALLY FILED
                                      :
           Defendants.                :
_____   :

# TABLE OF CONTENTS

**Page**

Table of Contents ................................................................................................................. i

Table of Authorities ............................................................................................................ ii

Summary of Argument ........................................................................................................ 1

Argument ............................................................................................................................. 3

    I.    Plaintiff Has Abandoned His Disparate Treatment Theory of Liability ................ 3

    II.    Plaintiff Does Not Have Standing to Bring this Action Against BNC ................... 3

    III.    Plaintiff Fails to State a Cause of Action for Discriminatory Impact against Defendants ..................................................................................................... 6

        A.    Plaintiff's Allegation that Defendants' Policy Discriminated Against Minorities is Speculative and Therefore Does Not Satisfy the Requisite Pleading Standard ............................................................... 6

            1.    Plaintiff Is Incorrect that He Need Not Plead Any Facts Suggesting that Defendants' Loans Had a Disparate Impact on Minorities ................................................................................. 8

            2.    Plaintiff's Reliance on General, Industry-Wide Statistics Is Insufficient to State a Discrimination Claim in the Second Circuit ............................................................................................ 10

        B.    Plaintiff's Claims for Disparate Impact under the ECOA and FHA Are No Longer Viable After the U.S. Supreme Court's Decision in *City of Jackson* ............................................................................................ 12

Conclusion .......................................................................................................................... 15

## TABLE OF AUTHORITIES

## FEDERAL CASES

*Allen v. Wright*, 468 U.S. 737 (1984) ....................................................................................... 5

*Amron v. Morgan Stanley Inv. Advisors, Inc.*, 464 F.3d 338 (2d Cir. 2006) ............... 11, 12

*Bell Atlantic v. Twombly*, 127 S. Ct. 1955 (2007) .................................................................. 8

*Brown v. Coach Stores, Inc.*, 163 F.3d 706 (2d Cir. 1998) ..................................................... 8

*Coleman v. Gen. Motors, Acceptance Corp.*, 196 F.R.D. 315 (M.D. Tenn. 2000) ............ 13

*Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443 (6th Cir. 2002) ....................... 13

*Connecticut National Bank v. Germain*, 503 U.S. 249 (1992) ........................................... 14

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102 (1980) .................. 13

*Diagnostic Cardioline Monitoring v. Leavitt*, 171 Fed. Appx. 374 (2d Cir. 2006) .............. 4

*Garcia v. Country Wide Fin. Corp.*, No. 07-1161 (C.D. Cal. Jan. 17, 2008) ................. 3, 11

*Habecker v. Town of Estes Park*, 518 F.3d 1217 (10th Cir. 2008) ....................................... 4

*Hack v. President & Fellows of Yale College*, 237 F.3d 81 (2d Cir.) ................................ 13

*Jackson v. Novastar Mortg., Inc.*, No. 06-2249, 2007 U.S. Dist. LEXIS 93584
   (W.D. Tenn. Dec. 20, 2007) ............................................................................................ 11

*Jones v. Capital Cities/ABC Inc.*, 168 F.R.D. 477 (S.D.N.Y. 1996) ................................... 10

*Jones v. United States*, 526 U.S. 227 (1999) ........................................................................ 13

*Lewis v. Casey*, 518 U.S. 343 (1976) ....................................................................................... 6

*Longview Fibre Co. v. Rasmussen*, 980 F.2d 1307 (9th Cir. 1992) .................................... 13

*Martinez v. Freedom Mortg. Team, Inc.*, 527 F. Supp. 2d 827 (N.D. Ill. 2007) ........... 6, 11

*McClain v. Amer. Econ. Ins. Co.*, 424 F.3d 728 (8th Cir. 2005) ........................................... 5

*McGehee v. Albright*, 210 F. Supp. 2d 210 (S.D.N.Y. 1999) ................................................ 5

*Newman v. Apex Fin. Group, Inc.*, No. 07, C 4475, 2008 U.S. Dist. LEXIS 2249
(N.D. Ill. Jan. 11, 2008) ......................................................................................... 11

*Nova Health Sys. v. Gandy*, 416 F.3d 1149 (10th Cir. 2005) ................................................. 4

*Payares v. JP Morgan Chase & Co.*, Case No. 07-05540 (C.D. Cal. May 15,
2008) ................................................................................................................. 3, 11

*Ramirez v. GreenPoint Mortg. Funding, Inc.*, No. C08-0369, 2008 WL 2051018
(N.D. Cal. May 13, 2008) ......................................................................................... 11

*In re Salomon Smith Barney Mut. Fund Fees Litig.*, 528 F. Supp. 332 (S.D.N.Y.
2007) ............................................................................................................. 11, 12

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976) .................................................. 4, 5

*Smith v. City of Jackson*, 544 U.S. 228 (2005) ......................................................... 7, 12, 13

*Tribett v. BNC Mortgage*, Case No. 07 C 2809 (VMK), 2008 U.S. Dist. LEXIS
3573 (N.D. Ill. Jan. 17, 2008) ................................................................................... 10

*Ware v. Indymac Bank*, 534 F. Supp. 2d 835 (N.D. Ill. 2008) .......................................... 11

*Warth v. Selden*, 422 U.S. 490, 502 (1975) ................................................................... 6

*Zamudio v. HSBC North America Holdings, Inc.*, No. 07-C-4315, 2008 U.S. Dist.
LEXIS 13952 (N.D. Ill. Feb. 20, 2008) ................................................................ 9, 10, 11

## FEDERAL STATUTES

Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq* ................................................. 1, 6

Fair Housing Act, 42 U.S.C. § 3601 *et seq* .................................................................... 1

## MISCELLANEOUS

Federal Rule of Civil Procedure 12(b)(1) ......................................................................... 1

Federal Rule of Civil Procedure 12(b)(6) ......................................................................... 1

Regulation B, 15 U.S.C. § 1601 *et seq.* ........................................................................ 14

Defendants Lehman Brothers Bank, FSB ("Lehman") and BNC Mortgage LLC ("BNC") (collectively, "Defendants") respectfully submit this reply memorandum of law in further support of their motion to dismiss the complaint filed by Plaintiff Pedro E. Rivas in the above-captioned matter (the "Complaint") with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## SUMMARY OF ARGUMENT

Defendants moved to dismiss the Complaint, which alleges violations of the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* ("ECOA") and the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA") in connection with a loan Plaintiff Rivas obtained from Lehman through a third-party mortgage broker. The Complaint alleged two distinct theories of liability: disparate treatment and disparate impact. In a Memorandum in Support of Defendants' Motion to Dismiss the Complaint,[1] Defendants demonstrated why neither of Plaintiff's two theories of liability stated a cause of action. Plaintiff made *no attempt* in the Opposition Memorandum to rebut Defendants' arguments concerning Plaintiff's disparate treatment theory. Apparently conceding that the allegations in the Complaint do not support a claim for disparate treatment, Plaintiff already has abandoned this half of his case. As a result, the only claim before the Court is that Defendants had a pricing policy that had a disparate impact on minorities, including Plaintiff. This claim should be dismissed.

Plaintiff maintains that Defendants are liable for the alleged disparate impact of mortgage lending practices that purportedly led minorities to pay higher rates and fees than non-minorities.

---

[1] Throughout this memorandum, the Memorandum in Support of Defendants' Motion to Dismiss the Complaint is referred to as the "Moving Memorandum" or "Moving Mem." Throughout this memorandum, Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss is referred to as the "Opposition Memorandum" or "Opp. Mem."

1

Plaintiff lacks standing to assert such a claim against BNC and fails to state a claim as to Lehman.

Plaintiff's contention that BNC is a proper defendant in this action is nonsensical, given that BNC did not play—and is not alleged to have played—any role at all in connection with Plaintiff's loan. Plaintiff tacitly acknowledges that fact but nevertheless argues that he has standing to sue BNC merely because it allegedly "schemed to implement and promote" a discretionary pricing policy. Putting aside the absence of facts supporting that conclusory allegation, Plaintiff has no standing to make that claim. Because BNC was a total stranger to the Plaintiff, he cannot meet his burden of showing "a substantial likelihood that the defendant's conduct *caused* the plaintiff's injury." As such, his alleged injury is not fairly traceable to BNC, and he lacks standing to sue BNC.

Plaintiff's claim that Lehman is liable for the alleged disparate impact should be dismissed for several reasons, including that Plaintiff fails to allege any *facts supporting his conclusory assertion* that Lehman's so-called discretionary pricing policy had a disproportionate impact on minorities. Plaintiff relies solely on stale industry-wide data and fails to allege a single fact about his loan, any other Lehman loan, or Lehman's lending as a whole that makes plausible Plaintiff's theories that he overpaid for his loan and/or that statistical analysis would reveal a significant discrepancy between the rates and fees paid by minorities and non-minorities for Lehman's loans.

Instead of identifying facts to support his theories, Plaintiff simply states that he need not demonstrate more at the pleading stage and cites virtually identical cases that his attorneys have filed against other mortgage lenders in the industry. However, those decisions are distinguishable, and those actions themselves only provide further evidence of Plaintiff's

transparent attempt to subject Defendants to costly discovery while he fishes for a case. The Court should not countenance Plaintiff's plan and therefore should dismiss his complaint.

## ARGUMENT

For the reasons set forth in the Moving Memorandum and below, Plaintiff's causes of action should be dismissed with prejudice.

I.  Plaintiff Has Abandoned His Disparate Treatment Theory of Liability

Plaintiff's disparate treatment claim rested entirely upon a few conclusory allegations that Lehman "schemed to intentionally discriminate against Plaintiff and Class Members" through implementation of its facially neutral policies. (*E.g.*, Comp. ¶ 27.)  In the Moving Memorandum, Defendants argue that the Complaint fails to show that Lehman adopted or maintained any policy "on discriminatory terms and conditions for reasons that were, in significant part, discriminatory." (Moving Mem. at 10.)

In the Opposition Memorandum, Plaintiff did not even attempt to rebut Defendants' arguments concerning disparate treatment. In fact, Plaintiff did not address his disparate treatment theory *at all* in the Opposition Memorandum and thus has abandoned the theory. Indeed, two of the cases Plaintiff relies upon for other purposes in his Opposition Memorandum resulted in holdings that allegations virtually identical to those pled in the Complaint failed to state a claim under a disparate treatment theory. (Opp. Mem. at 2, 17, 19) (citing *Payares v. JP Morgan Chase & Co.*, No. 07-5540 (C.D. Cal. May 15, 2008); *Garcia v. Country Wide Fin. Corp.*, No. 07-1161 (C.D. Cal. Jan. 17, 2008)).

II.  Plaintiff Does Not Have Standing to Bring this Action Against BNC

Plaintiff's claims against BNC should be dismissed pursuant to Rule 12(b)(1). In the Moving Memorandum, Defendants demonstrated that the Complaint lacks any allegation that BNC originated, solicited, funded, serviced, set rates on, or had any other connection whatsoever

with Plaintiff's loan.[2] The Opposition Memorandum does not dispute any of these statements and therefore concedes that BNC played none of these roles in connection with Plaintiff's mortgage.[3] Plaintiff also acknowledges that in order to establish standing, he must "allege distinct and palpable injuries that are fairly traceable to defendants' actions." (Opp. Mem. at 7). Accordingly, it is puzzling that Plaintiff would argue that he has carried *his burden* of establishing standing to bring this action against BNC.[4] To the contrary, if Plaintiff's argument is accepted, he simply could have sued all companies in the mortgage industry—whether or not Plaintiff had ever had any dealings with any of them.

Courts uniformly hold that the "fairly traceable" prong of the Article III test requires "proof of a substantial likelihood that the defendant's conduct *caused* the plaintiff's injury." *E.g., Habecker v. Town of Estes Park*, 518 F.3d 1217, 1225 (10th Cir. 2008) (emphasis added) (quoting *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005)); *see also Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 45 (1976) (remanding to the district court to dismiss the complaint for lack of standing because "[s]peculative inferences are necessary to connect [respondents'] injury to the challenged actions of petitioners").

---

[2] As explained in the Moving Memorandum, Plaintiff's claims against BNC also could be dismissed for these reasons pursuant to Rule 12(b)(6).

[3] To the extent that Plaintiff seriously contends that BNC's role in connection with Plaintiff's loan is "at best a factual question that is not appropriate for resolution on a motion to dismiss," he is simply wrong. Plaintiff bears the burden of establishing jurisdiction over BNC on a Rule 12(b)(1) motion. *See Diagnostic Cardioline Monitoring v. Leavitt*, 171 Fed. Appx. 374, 375 (2d Cir. 2006). Accordingly, he must allege sufficient facts to demonstrate that any alleged injury he has suffered is fairly traceable to BNC in order to survive the threshold standing question.

[4] The Opposition Memorandum states that Defendants concede two points: (1) Plaintiff has suffered an injury in fact that is actual, concrete and particularized and (2) it is likely (not speculative) that the injury will be redressed by a favorable decision. (Opp. Mem. at 7-8.) That statement is not true. Defendants do not believe that Plaintiff has suffered any injury in fact and that Plaintiff therefore has no injury to redress. Defendants focus their arguments on the "fairly traceable" element for the purposes of this motion to dismiss because Plaintiff so clearly falls short of the requisite standard.

Plaintiff claims that his alleged injury is "fairly traceable" to BNC's actions because he alleges in conclusory fashion that Lehman and BNC implemented and promoted the so-called discretionary pricing policy, *see* Opp. Mem. at 7, but Plaintiff must do more than simply substitute the word "Defendants" for "Lehman" to establish standing to sue BNC. Not surprisingly, Plaintiff fails to cite a single fact or case to support his proposition, given that courts routinely dismiss cases based on such tenuous claims of standing. *See, e.g., Allen v. Wright*, 468 U.S. 737, 759 (1984) (holding that the "links in the chain of causation between the challenged Government conduct and the asserted injury are far too weak for the chain as a whole to sustain respondents' standing"); *Simon,* 426 U.S. at 42-43 (allegations that petitioners "'encouraged' hospitals to deny services" that injured respondents were "purely speculative" and did not establish standing); *McGehee v. Albright*, 210 F. Supp. 2d 210, 215-16 (S.D.N.Y. 1999) (dismissing causes of action because injury was not fairly traceable to defendants).[5]

In reality, Plaintiff's claim of standing does not even come close. Again, Plaintiff does not allege any involvement by BNC in connection with his loan, and therefore he unquestionably has failed to allege "proof of a substantial likelihood that the [BNC's] conduct caused [his] injury."

Plaintiff also confuses the pleading phase with the class certification phase when he argues that the Complaint was adequately pled because it "alleges that both Lehman and BNC caused injury to Plaintiff and members of the Class as a result of their use of the Discretionary Pricing Policy." BNC did not "use" any policy in connection with Plaintiff's loan, let alone the so-called discretionary pricing policy. BNC was a total stranger to Plaintiff's loan, as the

---

[5]   *See also McClain v. Amer. Econ. Ins. Co.*, 424 F.3d 728, 732 (8th Cir. 2005) (dismissing claims for lack of Article III standing because the alleged injury was not "fairly traceable to the challenged action of the defendants").

absence of any allegations of involvement establishes. And it is well-settled that the mere fact that Plaintiff brings his claims as a class action does not obviate the need to establish Article III standing against all defendants. (Moving Mem. at 9.)[6] Plaintiff's attempt to sweep BNC into this class action based on speculation that BNC may have applied a discretionary pricing policy in connection with another potential class member's loan fails; at this stage, BNC's loans to anyone other than Plaintiff are irrelevant. Plaintiff cannot seek to bring a class action against BNC until he first establishes that he personally has a claim against BNC.

Finally, Plaintiff argues that he has standing against BNC because BNC qualifies as a creditor under the definition of ECOA. However, it is plainly apparent that a plaintiff may only state a claim under the ECOA against his or her *own* creditor, not simply any creditor, and there are no allegations in the Complaint that BNC is Plaintiff's creditor. 15 U.S.C. § 1691(a)(1).[7] Under Plaintiff's reading of the ECOA, he could have brought this action based on his loan from Lehman against any of the thousands of "creditors" in the country.

### III. Plaintiff Fails to State a Cause of Action for Discriminatory Impact against Defendants

As shown in the Moving Memorandum, the Complaint does not support Plaintiff's disparate impact theory. Plaintiff has failed to allege adequately that statistical analysis of Defendants' mortgage lending practices would reveal a discriminatory impact and furthermore

---

[6] The fact that a case is brought as a class action "adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1976); *Warth v. Selden*, 422 U.S. 490, 502 (1975) (same).

[7] *Martinez v. Freedom Mortg. Team, Inc.*, 527 F. Supp. 2d 827 (N.D. Ill. 2007), which Plaintiff cites as support for his argument, is inapposite. The excerpt from *Martinez* that Plaintiff quotes merely states that both the lender and the mortgage broker who were *actively involved in the mortgage transaction* at issue were creditors under the ECOA. *Martinez* does not stand for the proposition that a plaintiff may bring a claim under the ECOA against a company, like BNC, that had no role whatsoever in connection with the plaintiff's mortgage.

that any alleged disparate impact resulted from Defendants' specific policy. Finally, assuming *arguendo* that the Court believes that Plaintiff adequately pled a disparate impact caused by a specific policy of the Defendants, Plaintiff's disparate impact claim should be dismissed because such claims are no longer viable after the U.S. Supreme Court's decision in *Smith v. City of Jackson*, 544 U.S. 228 (2005).

    A.    Plaintiff's Allegation that Defendants' Policy Discriminated Against Minorities is Speculative and Therefore Does Not Satisfy the Requisite Pleading Standard

In the Moving Memorandum, Defendants demonstrated that the Complaint fails to allege any facts that would show that Lehman's facially-neutral policy had a significant discriminatory impact on Plaintiff and other minorities. Plaintiff does not attempt to refute the facts underlying any of these arguments, and therefore it is undisputed that:

- Plaintiff relies solely on industry-wide HMDA data, which reflect aggregated information concerning more than 8,900 mortgage lenders. Notably, employees of the Federal Reserve Board that Plaintiff cite as authority caution that the data cannot be used to draw conclusions about any individual lender's practices (Moving Mem. at 16);

- Plaintiff relies solely on 2004 and 2005 HMDA data, despite the fact that Plaintiff obtained his loan in 2007. HMDA data from subsequent years are publicly available, but Plaintiff opted not to cite them (Moving Mem. at 18);

- The HMDA data do not control for numerous factors that could explain any perceived discrepancies (Moving Mem. at 17); and

- The Complaint does not contain a single allegation about any loan that either Defendant made to any minority other than Plaintiff or any loan made to any non-minority. (Moving Mem. at 18-19.)[8]

---

[8] Notably, Plaintiff barely pleads any facts about his *own* loan. This contrasts with the complaints in several cases cited in the Opposition Memorandum, in which the detailed description of the process and circumstances of the plaintiffs' loans provided support for their discrimination claims. For examples of such complaints, *see Martinez v. Freedom Mortg. Team, Inc.*, 1:07-cv-03442 (N.D. Ill. July 31, 2007); *Ware v. Indymac Bank*, 1:07-cv-01982 (N.D. Ill. May 15, 2007); *Jackson v. Novastar Mortg., Inc.*, No. 06-2249 (W.D. Tenn. Apr. 28, 2006). It should go without saying that even if Plaintiff could demonstrate that minorities generally paid more than non-minorities for Defendants' loans—which they did not—

In essence, Plaintiff concedes that the sole basis for claiming that Lehman discriminated against him is that in certain years (but not the year in which Plaintiff obtained his loan), discrimination occurred in the mortgage industry generally according to some sources.

          1.      Plaintiff Is Incorrect that He Need Not Plead Any Facts Suggesting that *Defendants'* Loans Had a Disparate Impact on Minorities

Rather than attempt to refute the substance of any of the facts identified above, Plaintiff sidesteps them and simply argues that he need not address them at this point. Plaintiff claims that by asserting (and repeating) an unsupported conclusory allegation that the "Discretionary Pricing Policy caused minorities to pay disparately more charges than similarly situated non-minorities" and generally describing the so-called policy, he has met his burden of pleading that his discriminatory impact theory is not speculative. (Opp. Mem. at 14, 18.)

Plaintiff is wrong because he must do more than simply *describe* the alleged policy; rather, he must show some basis for the Court to believe that the alleged policy had a discriminatory impact against minorities generally and him in particular. Plaintiff concedes that the Complaint must plead facts that "raise a right to relief above the speculative level" and contain "enough facts to raise *a reasonable expectation that discovery will reveal evidence*" to support his claims. (Opp. Br. at 5-6, 18) (emphasis added).[9] Here, Plaintiff's theory of liability against Defendants is pure speculation, as evidenced by the fact he relies exclusively on

---

Plaintiff can only prevail if he personally overpaid as well. *See Brown v. Coach Stores, Inc.*, 163 F.3d 706, 711 (2d Cir. 1998) (dismissing the complaint that failed to state a claim "[e]ven if we assume that [the plaintiff] adequately pleaded a claim of pattern and practice discrimination"). It is axiomatic that Plaintiff cannot pursue a *class* action if he does not have an action.

[9]     *See also Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Plaintiff also acknowledges that the Second Circuit requires a flexible plausibility standard, "which obliges a pleader to amplify a claim with some factual allegations in those contexts in which such amplification is needed to render the claim plausible." (Opp. Mem. at 6.)

industry-wide data.[10] *Twombly* would be rendered impotent if Plaintiff's case can proceed past the pleading phase solely based on allegations that could be made indiscriminately against every single mortgage lender in the country. In fact, it is difficult to fathom a discrimination case that properly would be dismissed under the standard that Plaintiff would have the court apply.[11]

Plaintiff cites *Zamudio v. HSBC North America Holdings Inc.*[12] as support for the proposition that his conclusory allegations are sufficient at the pleading stage, but that case does not support Plaintiff's argument. (Opp. Mem. at 19 n.14.) In *Zamudio*, a loan officer employed by the defendant mortgage lender (not a third-party mortgage broker) informed the plaintiff that he would qualify for a loan if the appraised value of his residence equaled at least $140,000. 2008 U.S. Dist. LEXIS 13952, at *1. The house appraised at $144,900; nevertheless, the defendant denied the plaintiff's loan application.[13] *See id.* Accordingly, the alleged objective facts in *Zamudio*—whether true or false—provide some basis for believing that the plaintiff's

---

[10] Plaintiff argues that the Complaint includes specific pleading data applicable to Defendants in paragraph 21 (Opp. Mem. at 22), but this argument is misleading. Paragraph 21 of the Complaint states as follows: "*[b]ased on the HMDA data*, minorities who borrowed from Defendants between 2004 and 2006 were nearly 50% more likely than Caucasian borrowers to have received a high-APR loan to purchase or refinance their home." (emphasis added). This allegation is *not* Defendant-specific and appears to rely on the nationwide HMDA data. (Notably, the same allegation almost verbatim appears in complaints filed by Plaintiff's counsel against other mortgage lenders.) Notably, when citing this allegation in the Opposition Memorandum, Plaintiff omits the phrase "[b]ased on the HMDA data" and does not replace it with ellipses to reflect that he had omitted this critical portion of the allegation.

[11] The Complaint would have fallen well short even of the pleading standard under pre-*Twombly* law. The simple statement that a policy caused minorities to pay more than non-minorities does not put Defendants sufficiently on notice of Plaintiff's claims. First, to which minorities does Plaintiff refer? All? African-Americans? Jews? Asians? Women? Homosexuals? Second, over which time period does Plaintiff allege discrimination, given that the Complaint fails to identify a class period? Third, the policy purportedly was implemented through, among others, mortgage brokers, but the Complaint does not identify which ones. In light of these gaps in the Complaint, Defendants do not know which borrowers, loans, brokers, or time periods are at issue, and therefore the Complaint fails to satisfy even a pre-*Twombly* pleading standard.

[12] No. 07-C-4315, 2008 U.S. Dist. LEXIS 13952 (N.D. Ill. Feb. 20, 2008).

[13] It is ironic that, in *Zamudio*, the plaintiff sued alleging that the defendants' "automated underwriting and credit scoring systems" had a discriminatory impact, whereas in this case Plaintiff alleges discrimination based on the use of subjective factors in the mortgage lending process. 2008 U.S. Dist. LEXIS 13952, at *1.

theory of discrimination was at least plausible, rather than purely speculative. In the present case, Plaintiff was not denied a loan and has not pled *any* facts that suggest that the rates and/or fees associated with his loan were inflated based on his race. Also, unlike in *Zamudio*, Plaintiff did not plead the substance of any communications with Defendants or even communications with his mortgage broker, let alone representations that he would qualify for a more favorable loan if certain facts were established.[14]

Finally, Plaintiff claims that requiring him to plead additional details before discovery would improperly deny him an opportunity to prove his claim, but that argument is unavailing.[15] As explained in the Opening Memorandum, "[t]he purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists." *Jones v. Capital Cities/ABC Inc.*, 168 F.R.D. 477, 480 (S.D.N.Y. 1996); Moving Mem. at 19. If Plaintiff cannot show that his claim is more than speculative without the benefit of discovery, his case must be dismissed.

        2.       Plaintiff's Reliance on General, Industry-Wide Statistics Is Insufficient to State a Discrimination Claim in the Second Circuit

In the Moving Memorandum, Defendants explained why Plaintiff's attempt to rely on industry-wide data to support a discrimination claim against Defendants was inadequate. (Moving Mem. at 15-19.) In the Opposition Memorandum, Plaintiff cites eight district court

---

[14] Plaintiff attempts to distinguish *Tribett*, a case in which the court dismissed claims of discrimination under the ECOA and FHA because the complaint contained only vague and conclusory allegations. (Opp. Mem. at 18; *Tribett v. BNC Mortgage*, Case No. 07-C-2809 (VMK), 2008 U.S. Dist. LEXIS 3573 (N.D. Ill. Jan. 17, 2008).) Unlike here, BNC was the lender in that case. Although the court permitted the plaintiff to amend its complaint to include allegations raised in opposition to the motion to dismiss, it is impossible to know how the court would have ruled on a motion to dismiss the amended complaint. Apparently recognizing that the claim asserted in that case (like this one) simply is not viable, the plaintiffs voluntarily dismissed all of their claims against the lender and proceeded solely against their mortgage broker.

[15] Plaintiff goes so far as to argue that Defendants' only means of defending themselves is to demonstrate the falsity of Plaintiffs' claims at the summary judgment stage, undoubtedly after spending countless dollars in legal fees. (Opp. Mem. at 21.)

10

cases for the proposition that motions to dismiss "similar complaints based on the data used here" have been denied with respect to the claims alleged here. (Opp. Mem. at 2.) However, Plaintiff fails to note that of the eight cases: (1) in four, the plaintiff did not rely on HMDA data at all, instead pleading detailed facts concerning the plaintiff's personal experience,[16] and (2) unlike here, plaintiffs in three others cited HMDA data that reflected mortgage activity *in the same year* that the plaintiff sought or obtained a mortgage.[17] In the remaining case, the nationwide HMDA data cited by the plaintiff included data through December 2005, and the plaintiff obtained his mortgage less than two months later. *See Garcia v. Country Wide,* No. EDCV 07-1161-VAP(JCRx) (C.D. Cal. Sept. 12, 2006) at ¶¶ 15-16, 37. Moreover, the court in *Garcia* relied heavily on the plaintiff's allegation that Countrywide was the single largest lender in the country. No. EDCV 07-1161-VAP(JCRx) (C.D. Cal. Jan. 17, 2008), at 16. The same cannot be—and is not—alleged against Lehman.

Moreover, even if *Garcia* reflects the Ninth Circuit standard, the Second Circuit has made clear that a plaintiff cannot rely solely on allegations regarding industry-wide practices to state a claim against an individual defendant. *See Amron v. Morgan Stanley Inv. Advisors, Inc.*, 464 F.3d 338, 346 (2d Cir. 2006); Moving Mem. at 16-17. In response, Plaintiff claims without explanation that "[t]he *Amron* decision is clearly limited to its facts" and does not support the proposition that reliance solely on industry-wide practices is insufficient to state a claim. (Opp. Mem. at 22) (emphasis in original). Plaintiff then cites *In re Salomon Smith Barney Mut. Fund*

---

[16] *See Ware v. Indymac Bank*, 534 F. Supp. 2d 835 (N.D. Ill. 2008); *Zamudio v. HSBC North America Holdings, Inc.*, No. 07-C-4315, 2008 U.S. Dist. LEXIS 13952 (N.D. Ill. Feb. 20, 2008); *Newman v. Apex Fin. Group, Inc.*, No. 07-C-4475, 2008 U.S. Dist. LEXIS 2249 (N.D. Ill. Jan. 11, 2008); *Jackson v. Novastar Mortg., Inc.*, No. 06-2249, 2007 U.S. Dist. LEXIS 93584 (W.D. Tenn. Dec. 20, 2007).

[17] *See Ramirez v. GreenPoint Mortg. Funding, Inc.*, No. C08-0369, 2008 WL 2051018 (N.D. Cal. May 13, 2008); *Payares v. JP Morgan Chase & Co.*, Case No. 07-05540 ABC (SHx) (C.D. Cal. Aug. 23, 2007); *Martinez v. Freedom Mortg.. Team, Inc.*, 527 F. Supp. 2d 827 (N.D. Ill. 2007).

11

*Fees Litig.*, 528. F. Supp. 332, 336 (S.D.N.Y. 2007) as support because in that case, the court "examin[ed] the allegations rejected in Amron." (Opp. Mem. at 22.)   While true, that statement does not support Plaintiff's contention.  In *Salomon*, the court explained the Second Circuit's holding in *Amron* (*i.e.*, that "plaintiffs did not 'set forth those facts necessary to a finding that the fees were excessive'") and held that the plaintiffs had not satisfied the pleading requirement set forth in *Amron*. 528 F. Supp. at 377 (quoting *Amron*, 464 F.3d at 344).  *Salomon* cannot be read to support Plaintiff's argument that *Amron* was somehow "limited to its facts."

        B.    Plaintiff's Claims for Disparate Impact under the ECOA and FHA Are No Longer Viable After the U.S. Supreme Court's Decision in *City of Jackson*

Even assuming *arguendo* that Plaintiff sufficiently pled a specific policy that had a discriminatory impact on minorities, Plaintiff's disparate impact claims are not cognizable under the FHA or the ECOA in light of the Supreme Court's ruling in *Smith v. City of Jackson*, 544 U.S. 228 (2005).  As explained in Defendants' Moving Memorandum, the Supreme Court recognized in *City of Jackson* that when Congress wanted a statute to permit disparate impact claims, it included language in the text of the statute that conveyed that intent. (Moving Mem. at 12-14.)  In response, Plaintiff incorrectly argues that Defendant's reading of *City of Jackson* is inconsistent with judicial opinions, legislative history, and Federal Reserve guidance. (Opp. Mem. at 9-10.)

First, while Plaintiff cites numerous cases in an attempt to argue that disparate impact theory under the ECOA and FHA is viable, Plaintiff fails to cite *any* post-*City of Jackson* authority binding on this Court that reached that conclusion.  As such, this Court should conduct its own analysis and determine whether the federal statutory language precludes disparate impact claims, considering available guidance from the U.S. Supreme Court and the Second Circuit.

While the Second Circuit has not addressed the viability of disparate impact claims under the ECOA and FHA since *City of Jackson*, the Supreme Court's decision in that case represents the most telling indication of how it would interpret the absence of "effects language" in the ECOA and FHA.[18]

Second, Plaintiff quotes from what he labels legislative history of the ECOA, *see* Opp. Mem. at 10, but that description is misleading. The relevant language of the ECOA was adopted in 1974, yet the language cited by Plaintiff appears in a 1976 congressional committee report. As the U.S. Supreme Court has held on multiple occasions, legislative history can be probative of the intent of the legislature that enacts the relevant legislation and should be distinguished from Congressional committee discussions about a provision of law already in existence. *See Jones v. United States*, 526 U.S. 227, 238 (1999) (cautioning that treating statements by a subsequent Congress as tantamount to legislative history "is a hazardous basis for inferring the intent of an earlier Congress"); *see also Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 117 (1980); *cf. Longview Fibre Co. v. Rasmussen*, 980 F.2d 1307, 1311-12 (9th Cir. 1992) (rejecting the probative value of a subsequent Congress's conference committee report). Accordingly, the Congressional committee discussions quoted by Plaintiff carry little, if any, weight.

---

[18]   In attempting to demonstrate that disparate impact claims remain viable under the ECOA and FHA, Plaintiff overreaches. First, Plaintiff cites *Hack v. President & Fellows of Yale College*, 237 F.3d 81, 90 (2d Cir.) but fails to note that he is citing a concurring, not the majority, opinion. (Opp. Mem. at 11.) Second, Plaintiff cites *Coleman v. Gen. Motors, Acceptance Corp.*, 196 F.R.D. 315, 325-26 (M.D. Tenn. 2000) and describes the decision as "modified on other grounds," when in fact the cited opinion was vacated. *See Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 450 (6th Cir. 2002).

Third, Plaintiff quotes from the Federal Reserve Board Commentary to Regulation B[19] as support for the proposition that the ECOA permits disparate impact claims. However, the language that Plaintiff quotes is based on the same 1976 Congressional committee report discussed above, which post-dates enactment of the relevant portions of the ECOA. Accordingly, for the same reasons that the so-called legislative history is not probative of Congressional intent, the Commentary to Regulation B is equally unpersuasive.

The language of the ECOA and FHA statutes themselves—which is the best indication of the meaning of the statutes[20]—do not contain the "effects" language that the Supreme Court has recognized evidences Congressional intent to permit disparate impact claims. In the end, this Court must balance: (1) the statutory language and the U.S. Supreme Court's opinion in *City of Jackson*, against (2) the language of a committee report of a Congress that did not adopt the relevant language (and a Federal Reserve commentary that cites it).

---

[19] Regulation B is the ECOA's implementing regulation that was issued by the Board of Governors of the Federal Reserve System pursuant to Title VII of the Consumer Credit Protection Act, as amended (15 U.S.C. § 1601 *et seq.*).

[20] *See Connecticut National Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'") (internal citations omitted).

## **CONCLUSION**

For all of the above reasons, Defendants BNC and Lehman request that this Court issue an order dismissing Plaintiff's claims with prejudice and granting such other and further relief as this Court deems proper.

Dated: New York, New York
       August 19, 2008

                                            MORGAN, LEWIS & BOCKIUS LLP

                                            By: _____
                                            Jami Wintz McKeon (JM-6144)
                                            Michael S. Kraut (MK-4469)
                                            101 Park Avenue
                                            New York, New York 10178
                                            (212) 309-6000
                                            *Attorneys for Defendants*